**FILED**

**October 10, 2016**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:44 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Chanel Hilliard, | ) Docket No.: 2015-01-0441 |
| Employee, | ) |
| v. | ) State File No.: 43773-2016 |
| Amazon.com, Inc., | ) |
| Employer, | ) Judge Thomas Wyatt |
| And | ) |
| American Zurich Ins. Co., | ) |
| Carrier. | ) |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

This case came before the undersigned Workers' Compensation Judge on October 5, 2016, upon the Request for Expedited Hearing filed by the employee, Chanel Hilliard, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The hearing focused on whether Ms. Hilliard is likely to prevail at a hearing on the merits that her alleged injuries arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court finds, at this time, Ms. Hilliard did not establish that, at a hearing on the merits, she will likely prevail in establishing the work-relatedness of her injury by medical expert opinion.[1]

### History of Claim

Ms. Hilliard is a fifty-two-year-old resident of Blairsville, Georgia. (T.R. 1 at 1.) In November 2015, she began working as a stower at the Chattanooga, Tennessee fulfillment center operated by Amazon.com, Inc. (Amazon). (Ex. 10 at 1.) Her job required her to push carts loaded with tote bags filled with items that she stocked in bins and shelves. (T.R. 4 at 3.) Ms. Hilliard testified this job required her to repetitively use her hands and arms to comply with Amazon's requirement that she transfer 1,700 to 2,000 items per day from totes to storage areas. She stated her pay and continued employment at Amazon depended on her successfully complying with Amazon's work

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

rate requirements.

On May 19, 2016, Ms. Hilliard began her 7:00 a.m. shift without pain or other limiting factor.[2] At approximately 1:30 p.m., she began experiencing pain and burning sensations in her neck, left shoulder and left arm, from the elbow down to the top of her hand and bottom of her left wrist, as she stowed products. (T.R. 4 at 3.) Ms. Hilliard reported her symptoms to her supervisor, who authorized her to seek treatment at Amcare, an on-site medical facility. *Id.* The Amcare records indicated Ms. Hilliard reported burning sensations in her left shoulder, arm, wrist, hand and fingers that she attributed to the repetitive motion she performed while working. (Ex. 1 at 1, 3.) Ms. Hilliard testified the provider at Amcare applied ice, allowed her to administer 800 milligrams of her own Ibuprofen, and released her to return to work without restrictions.

During the ensuing weeks, Ms. Hilliard continued working at Amazon despite worsening symptoms. (T.R. 4 at 3.) She sought emergency care on June 3, and saw her primary care physician on June 7 to address her problems. *Id.* On June 8, Ms. Hilliard again reported her symptoms to Amazon. *Id.* at 4. On this occasion, the provider she saw at Amcare presented her with a panel from which she selected Dr. Rickey Hutcheson, an orthopedic surgeon in Cleveland, Tennessee, for authorized care. *Id.*

Ms. Hilliard saw Dr. Hutcheson on June 10. (Ex. 4 at 1.) Dr. Hutcheson noted she had worked at Amazon for seven months[3] and reported a burning-type sensation on the top of her left hand that progressively worsened to the point she experienced pain radiating "all the way up her arm." *Id.* Dr. Hutcheson described Ms. Hilliard's history as, "she was working in stow and was lifting totes and stuff[.]" *Id.* Ms. Hilliard reported "10 out of 10 pain that is aching, shooting, burning, and stabbing" and stated that she had not experienced such an injury previously. *Id.*

Dr. Hutcheson diagnosed Ms. Hilliard with cervical myofascitis and released her to return to work. (Ex. 4 at 2.) In addressing the causation of Ms. Hilliard's condition, Dr. Hutchison wrote that he consulted the second edition of the *AMA Guidelines to the Evaluation of Disease and Injury Causation* and concluded, "I cannot say with greater than 51% certainty that this is work related because there was not [a] specific event. It just occurred over time." *Id.* Dr. Hutcheson released Ms. Hilliard with instructions to follow-up with her family doctor. *Id.* at 2-3. Ms. Hilliard stated Dr. Hutcheson told her she should ask her family doctor to order an MRI, which she could present to him for

---

[2] Ms. Hilliard testified she had not experienced pain in her left upper extremity prior to the alleged date of injury and had never sustained a work injury. Ms. Hilliard's friend, Shea Auche, testified she observed Ms. Hilliard perform house and yard work, tend to her grandson, and ride a motorcycle without exhibiting pain prior to the date of injury.

[3] Ms. Hilliard testified she worked in the Amazon fulfillment center through a temp agency for several months before Amazon hired her as its employee.

further determination whether her injury was work-related. (T.R. 4 at 4.)[4]

On June 13, Amazon denied Ms. Hilliard's workers' compensation claim, taking the position she did not sustain an injury by accident in the course and scope of employment. (Ex. 11 at 2.) In support of its position, Amazon wrote on the Notice of Denial it filed that it denied Ms. Hilliard's claim "[b]ased on the medical opinion of the authorized treating, panel selected physician that [her] condition is not work related." *Id.* Amazon's denial set Ms. Hilliard on the course of using her private health insurance to obtain treatment and diagnosis of her symptoms.

Her general practitioner, Dr. William David Breedlove, ordered a cervical MRI that revealed disc bulges at the C3-4, C4-5 and C5-6 levels of her cervical spine, with the C4-5 bulge effacing the spinal cord and the C5-6 bulge shown to be a "slight left-sided protrusion." (Ex. 3 at 3-4.) Dr. Breedlove referred Ms. Hilliard to Dr. Bruce Nixon, a neurosurgeon, who ordered a nerve conduction study, which Dr. Michael Baugh performed on September 2. (Ex. 5 at 1-2; Ex. 6 at 1.) Dr. Baugh interpreted the study to show "radiculopathy with active denervation potentials" at the C8-T1 level, plus moderate right carpal tunnel syndrome." *Id.* Ms. Hilliard has undergone two steroid injections in her cervical spine for treatment of her symptoms. She has not returned to work since June 2.

Ms. Hilliard filed her Petition for Benefit Determination on July 14 to obtain medical and temporary disability benefits. (T.R. 1.) When mediation failed to resolve the parties' disputes, the mediating specialist issued a Dispute Certification Notice (T.R. 2) and this hearing ensued.

### Findings of Fact and Conclusions of Law

In *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015), the Workers' Compensation Appeals Board held the employee has the burden of proving all elements of a workers' compensation claim. *See also* Tenn. Code Ann. §50-5-239(c)(1) (2015). Among other elements, the employee must prove his or her injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14) (2015).

Tennessee Code Annotated section 50-6-102(14)(C) (2015) provides that "an injury causes death, disablement or the need for medical treatment *only if it has been*

---

[4] Ms. Hilliard introduced this statement from Dr. Hutcheson through the affidavit she filed in support of her Request for Expedited Hearing. Amazon objected to the statement in the affidavit on hearsay grounds. The Court overruled the objection, holding Ms. Hilliard could introduce it in rebuttal to Dr. Hutcheson's medical records and, further, under the exception to the hearsay rule found in Tennessee Rule of Evidence 803(3) (2016) allowing a party to introduce a hearsay statement to explain his or her then-existing state of mind. The Court found Ms. Hilliard's statement about what Dr. Hutcheson told her was relevant to explain why she later obtained an MRI.

3

*shown to a reasonable degree of medical certainty* that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." (Emphasis added.) The italicized language indicates the statutory requirement that an employee establish not only a factual basis indicating his or her injury happened on the job, but also come forward with expert medical opinion that the claimed injury arose primarily out of and in the course and scope of employment.

At the Expedited Hearing stage of a claim, an employee need not establish his or her claim by a preponderance of the evidence, but must come forward with sufficient evidence to enable the trial court to conclude that the employee "would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9-10 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). The Court applied the above evidentiary standard in determining the parties' rights in this Expedited Hearing.

The Court closely observed Ms. Hilliard's in-person testimony and finds that she testified assertively and confidently. The Court credits as accurate her testimony that she had not experienced pain, burning, numbness and tingling in her neck, left shoulder and left upper extremity prior to May 19, 2016, and that the described symptoms came on as she performed the repetitive activities she required to execute her duties as a stower in Amazon's fulfillment center. Accordingly, the Court finds that Ms. Hilliard will likely prevail at a hearing on the merits in establishing a plausible factual basis for the work-relatedness of her injury.

As indicated above, however, the establishment of a factual basis indicating her symptoms happened while she was working does not automatically entitle Ms. Hilliard to the benefits she seeks. She must also establish the causation of her injury by expert medical opinion. Amazon contends Ms. Hilliard's failure to prove her injury by expert medical opinion precludes her from obtaining the benefits she seeks.

Amazon denied Ms. Hilliard's claim on the basis of the causation opinion contained in Dr. Hutcheson's June 10 report (Ex. 11 at 1) and admitted the same opinion into evidence during the Expedited Hearing. Amazon contended that the Court need not consider any other evidence in deciding this Expedited Hearing since the Workers' Compensation Law affords Dr. Hutcheson's opinion a presumption of correctness due to his status as Ms. Hilliard's authorized treating physician.

Ms. Hilliard countered that the presumption of correctness afforded Dr. Hutcheson's opinion is rebuttable and the Court should not rely on it to deny her claim because Dr. Hutcheson gave his opinion with benefit of only an x-ray.[5] She also argued Dr. Hutcheson's opinion is unreliable in that he deemed her injury was not work-related

---

[5] Dr. Hutcheson's report indicated he did not order an x-ray or any other diagnostic test. (Ex. 4 at 2.)

simply because it occurred over time. Ms. Hilliard pointed out that Tennessee law provides workers' compensation benefits for cumulative trauma injuries. Finally, Ms. Hilliard urged the Court to rely on the opinion of her primary care physician, Dr. Breedlove, whom she alleged provided an opinion that her injury is work-related.

The Court begins its analysis of the medical evidence by stating that it gives little weight to Dr. Hutcheson's causation opinion. Dr. Hutcheson described the evidentiary standard under which he provided his opinion as, "I cannot say with greater than 51% certainty that this is work-related." (Ex. 4 at 1.) The Court finds the quoted language indicates Dr. Hutcheson fundamentally misunderstood the legal standard under which a physician must state an opinion in a claim before the Tennessee Court of Workers' Compensation Claims. Section 50-5-102(14)(C) requires that a physician state a causation opinion upon a reasonable degree of medical certainty, as opposed to "51% certainty" as indicated in Dr. Hutcheson's report.

More importantly, the Court finds Dr. Hutcheson's opinion that Ms. Hilliard's injury was not work-related because "there was no specific event. It just occurred over time" contradicts the definition of what constitutes a compensable injury under the Workers' Compensation Law. Contrary to Dr. Hutcheson's stated opinion, the general assembly has specifically provided benefits for cumulative trauma conditions and for injuries caused by a specific set of incidents identifiable by time and place of occurrence, so long as those conditions and/or injuries arise primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. §§ 50-6-102(14), 50-6-102(14)(A) (2015), respectively.

In view of the above statutory authority, the Court finds Dr. Hutcheson's conclusion that Ms. Hilliard's injury is not compensable because "there was no specific event" amounts to little more than a conclusion about the ultimate legal decision in this claim based on his misinterpretation of the law. Likewise, the Court is also unpersuaded by Dr. Hutcheson's opinion that Ms. Hilliard's injury is not work-related because "[i]t just occurred over time." The statutory provision of benefits for injuries caused by a specific set of incidents implies that such an injury occurs over time.

The Court notes that the only history considered by Dr. Hutcheson as he formulated his opinion was that Ms. Hilliard's neck, left shoulder and left upper extremity symptoms developed as she worked "in stow and was lifting totes and stuff." Furthermore, Dr. Hutcheson recorded that Ms. Hilliard told him she had "[n]o previous injury before."[6] (Ex. 4 at 1.) In consideration of the described history, Dr. Hutcheson could not properly find that Ms. Hilliard's condition occurred over time without also concluding that it developed over the time during which she performed repetitive work at

---

[6] Ms. Hilliard testified without rebuttal during the Expedited Hearing that she told Dr. Hutcheson she had never experienced the described symptoms prior to May 19, 2016.

Amazon. On the basis of the factors discussed above, the Court gives little weight to Dr. Hutcheson's causation opinion.

The Court's lack of confidence in Dr. Hutcheson's opinion, however, does not override the requirement that Ms. Hilliard come forward with medical expert opinion establishing she will prevail at a hearing on the merits that her injuries arose primarily out of and in the course and scope of employment. After reviewing the medical evidence in the record, the Court finds that, at this time, Ms. Hilliard did not meet the above-described obligation.

The Court closely considered the records of Dr. Breedlove to determine if, as Ms. Hilliard contended, he opined that her work at Amazon caused her neck, left shoulder and left upper extremity symptoms. The Court has insufficient evidence before it to find that Dr. Breedlove gave such an opinion. In his office note of June 17, 2016, Dr. Breedlove wrote, "Injured her back. Has some pain up in her neck and shoulders apparently from lifting packages." (Ex. 3 at 1.) Later, Dr. Breedlove authored a letter dated July 12, 2016, in which he wrote, "Chanel Hilliard was seen in the office in June when she injured her back and had some pain in her neck and shoulders apparently from work while lifting packages." *Id.* at 3. Ms. Hilliard contended the language quoted above indicates Dr. Breedlove's opinion that her injuries relate to her work at Amazon.

The fortuitous convergence in a doctor's notes of a diagnosis of a condition, accompanied by a history indicating the employee reported he or she suffered an injury on the job, falls short of the express medical expert opinion on causation that the Workers' Compensation Act requires for the recovery of benefits at even the Expedited Hearing stage of a claim. *See, e.g., James v. Landair Transp., Inc.,* No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. 28, at *12 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015). Without evidence that Ms. Hilliard submitted a specific inquiry to Dr. Breedlove soliciting his causation opinion, stated within a reasonable degree of medical certainty, the Court is unable to discern whether Dr. Breedlove is offering a causation opinion or simply stating that Ms. Hilliard told him she began experiencing symptoms while working.

Because the burden of proving causation falls on Ms. Hilliard, the Court cannot say that, at a hearing on the merits, she will likely prevail in establishing by expert medical opinion that her injuries arose primarily out of and in the course and scope of employment. Accordingly, at this time, the Court denies her claim for benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Hilliard's request for an interlocutory order of medical and temporary disability benefits is denied at this time.

2. This matter is set for a telephonic Initial (Scheduling) Hearing on December 12, 2016, at 10:00 a.m., Eastern Time. The parties shall call in to 855-747-1721 (toll-free) or 615-741-3061 to participate.

ENTERED this the 10th day of October, 2016.

_____
Thomas Wyatt, Judge
Court of Workers' Compensation Claims

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-741-3061 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order Denying to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

7

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical records of Amcare at Amazon.com, Inc.;
2. Medical records of Parkridge Medical Center;
3. Medical records of Dr. William David Breedlove;
4. Medical records of Tennessee Valley Bone & Joint/Dr. Rickey Hutcheson;
5. Medical records of The Longstreet Clinic/Dr. Bruce Nixon;
6. Medical records of Gainesville Neurology/Dr. Michael Baugh;
7. Medical records of Specialty Clinic Spine Intervention/Dr. Steve Crider;

8. First Report of Work Injury form (C20);
9. Employee's Choice of Work Injury form (C42);
10. Wage Statement (C41);
11. Notice of Denial of Claim for Compensation (C23);
12. Transcript of voicemail left by Steven Kelly Lambert on The Roberts Company phone;
13. Transcript of recorded statement of Steven Kelly Lambert taken December 22, 2015;
14. Transcript of the deposition of Dr. Justin Hall;
15. Accident reports and typed notes of Carl Clark, safety manager of The Roberts Company;
16. Unsigned Agreement Between Employer/Employee Choice of Physician form (C-42);
17. *Facebook* posts between December 26, 2015, and January 1, 2016;
18. November 2015 and December 2015 calendars; and
19. Email from Tammy Whitehurst to Ambre Wachter containing Steven Kelly Lambert's attendance record from November 11, 2015, to December 8, 2015.

Technical record:[7]

1. Petition for Benefit Determination, filed July 14, 2016;
2. Dispute Certification Notice, filed September 6, 2016;
3. Request for Expedited Hearing, filed September 15, 2016;
4. Affidavit of Chanel Hilliard, filed September 15, 2016;
5. Amazon's Position Statement, filed September 6, 2016;
6. Position Statement of Chanel Hilliard, filed September 6, 2016; and
7. Amazon's Pre-Hearing Brief, filed October 4, 2016.

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 10th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Chanel Hilliard, Self-Represented Litigant | | | X | Chanel_hilliard@hotmail.com |
| Chris Eads, Attorney | | | X | creads@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10